**Application of Archibald M. HYSON.**
**Patent Appeal No. 8617.**

United States Court of Customs
and Patent Appeals.
Jan. 27, 1972.

Lynn N. Fisher, Wilmington, Del., attorney of record, for appellant; Gerald A. Hapka, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and RAO, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–12 in appellant's application serial No. 614,817, filed February 9, 1967, for "Liquid Uracil Concentrates." We affirm.

*The Subject Matter Claimed*

Appellant claims liquid, water-soluble concentrates composed of the lithium salts of certain 3, 5, 6-substituted uracils dissolved in a mixture of water and specified lower alcohols. The specification teaches that these concentrates are useful as herbicides applicable in diluted form by direct-spray techniques. Claims 1 and 3 are representative. (Position

numbering and additional subparagraphing are supplied.)

1. A liquid, water soluble, herbicidal concentrate composed of

20% to 50% by weight of the lithium salt of a uracil of the following formula:

[A4871]

wherein

$R_1$ is methyl or ethyl;

$R_2$ is hydrogen or methyl;

$R_3$ is alkyl of 1 through 6 carbon atoms; and

$R_4$ is halogen;

in a solvent system composed of

25% to 100% by weight of an alcoholic media [sic] selected from the group consisting of monohydroxy alkanes of 1 through 3 carbon atoms, dihydroxy alkanes of 2 through 3 carbon atoms and mixtures thereof, and

0 to 75% by weight of water or a water miscible liquid.

3. The concentrate of Claim 1 wherein the uracil is 5-bromo-3-*sec.*-butyl-6-methyluracil.

### The References

The references are:

Shmidl     2,510,839   June 6, 1950
Vartiak
  (Canada)    707,272   Apr. 6, 1965
Loux     3,235,357   Feb. 15, 1966
Evans     3,291,592   Dec. 13, 1966

Loux teaches how to make a large class of uracil compounds the lithium salts of certain of which are used in the concentrates claimed here. Indeed, appellant's specification incorporates by reference Loux's teachings in that respect. Furthermore, Loux teaches how to prepare the salts of those compounds, in-

cluding lithium salts, and states that they "are especially advantageous for use as herbicides because they are soluble in water and can be applied as aqueous solutions." Examples 33, 43, and 44 show aqueous formulations wherein sodium, potassium or ammonium uracil salts and sodium lauryl sulfate are dissolved in water, the two salts being in proportions of 20 or 25% and 1 or 2% by weight, respectively.

Evans, assigned to the same company as Loux and the present case, teaches the use as growth modification agents of virtually the same large class of uracil compounds (and their salts, including lithium salts) taught by Loux.

Vartiak, which appellant brought to the attention of the Patent Office, teaches liquid formulations of herbicidal uracils containing, inter alia, isopropyl alcohol, methyl alcohol, and ethylene glycol; however, it does not teach the use of the salts of the uracils in this manner.

Shmidl teaches "a carrying agent suitable for use with various herbicides, fungicides, insecticides, and the like." This carrying agent includes, inter alia, an "organic oxygen-containing solvent" which "may be preferably one of the lower boiling oxygen-containing compounds such as the aliphatic alcohols including methyl, ethyl, propyl, isopropyl, butyl, and amyl alcohols" and may also be a glycol "such as ethylene glycol and propylene glycol."

### The Rejection and Appellant's Rebuttal Evidence

All the appealed claims were rejected by the examiner "under Section 103 of Title 35 as unpatentable over Evans or Loux in view of Shmidl or the Canadian patent * * *." It was his view that, given knowledge of the herbicidal salts themselves "the mere addition of solvents or diluents to facilitate application would not amount to invention * * *," a now obsolete way of expressing obviousness under § 103. He entered appellant's post-final Rule 132 affidavit comparing the particular uracil herbicides and solvents recited in his claims with other

uracil herbicides and other solvents but stated that it did "not obviate this rejection for the reason that it merely points out that different compounds may require different solvents. This is well known to any chemist."

█ This affidavit compared a solution of 30% by weight 5-bromo-3-*sec.*-butyl-6-methyluracil (bromacil, the compound specifically recited in claim 3) dissolved in a solution of lithium hydroxide in methanol with (1) a solution of 30% by weight bromacil dissolved in a solution of lithium hydroxide in water, (2) a solution of 30% by weight of the sodium salt of bromacil dissolved in methanol, and (3) a solution of 30% by weight of bromacil dissolved in methanol. The first solution "remained a homogeneous solution with no settling of solids," even when observed "Several weeks later"; the three solutions with which it was compared "all contained significant amounts of settled solids" when "allowed to sit for a short period of time."[1] The affidavit concluded with the following sentence:

On the basis of the observed results and my experience in this area, I conclude that in order to obtain a stable, practical, herbicidal concentrate containing 25% to 50% by weight of the active uracil, the following requirements must be met:

(a) the lithium salt of the uracil must be used, and

(b) the solvent must contain 25 to 100% of an alcoholic media [sic].

In affirming, the board noted appellant's admissions that the lithium salts recited in his compositions were previously known and that uracil herbicides had been previously formulated in compositions containing alcohols and said "The only thing not shown by the art is the specific compositions of 25 to 50% of the lithium salt or uracil with 25 to 100% of the solvent being an alcohol medium." The board saw nothing nonobvious about these specific percentages on their face, and although it considered appellant's rebuttal evidence in more detail than the examiner had, it found appellant's evidence of unexpected results unpersuasive on two grounds. First, "The amount of lithium hydroxide which has been added to the uracil compound is not disclosed in * * * [the first two solutions]," and "The nature of the settled solids * * * was not determined and this sediment may not in any way be related to the fact that the soluble salt was lithium or some other salt." Second,

* * * only methanol was the solvent tested and there is nothing to show and no reason to believe that all of the solvents encompassed by the broad language used in the claims would have similar results. Only 30% of the compound was used, which does not prove that 20 to 50% thereof would give the same results.[2]

---

1. According to appellant's specification,

A further advantage of water soluble liquid concentrates is that they can be diluted to spray volume and yield a true solution which does not require agitation as distinguished from slurries made up with wettable powders, finely ground liquid suspensions or emulsifiable concentrates.

Despite its position in the list of "advantages," it is principally upon the water solubility of the claimed concentrates that appellant relies for patentability, and his brief expounds on advantages of this characteristic with great vigor. However, it is to the *evidence* contained in the specification and Rule 132 affidavits, if any, not to lawyers' arguments in briefs, that this court must look for proof of non-obviousness. Cf. In re Cavanagh, 436 F.2d 491, 496, 58 CCPA 856 (1971).

2. While the above-quoted language from the board's opinion might have been said to have been a new ground of rejection under 35 U.S.C. § 101 or the how-to-make provision of the first paragraph of 35 U.S.C. § 112 on the theory that it was questioning the operativeness of the claimed subject matter, appellant neither requested reconsideration nor attempted to avail himself of the rights provided by Rule 196(b) of the Patent Office Rules of Practice. Instead, he has assumed that he must prove the operative-

## OPINION

### I. *Prima Facie Obviousness*

As previously indicated, appellant acknowledges that "the uracil herbicides [i. e., the active agent contained in the concentrates] involved in the subject application were known to the art" prior to his invention, and he has also conceded that uracil herbicides other than those recited in his claims "have been formulated with alcohols" for use as sprays. Several of the hydroxy alkanes within the recitation of appellant's claims are specifically mentioned in the references for use as herbicide solvents. Moreover, Loux states that the salts, including lithium salts, of a class of uracils encompassing those recited in appellant's claims "are especially advantageous for use as herbicides because they are soluble in water and can be applied as aqueous solutions," and, in examples 33, 43, and 44, Loux discloses liquid, water-soluble concentrates containing 20 or 25% by weight of other uracil salts (sodium, ammonium, and potassium). The concentrations are within the ranges recited here,[3] and the cations are three from the group of ten recited by Loux. While appellant argues the contrary, we agree with the solicitor that,

> From these teachings in the prior art, it would have been at least *prima facie* obvious for a person with ordinary skill in the art to formulate a liquid water-soluble herbicidal concentrate by dissolving a lithium uracil salt as claimed, in the claimed range of proportions, in a lower alkyl alcohol or glycol with or without water.

### II. *Objective Evidence of Non-Obviousness*

Because we agree with the board that appellant's objective evidence of non-obviousness was not commensurate with his claims, we need not discuss the board's other criticisms of appellant's Rule 132 affidavit. Similarly, we express no view concerning the sufficiency of appellant's evidence to rebut the Patent Office's showing of prima facie obviousness with respect to the subject matter to which the affidavit is addressed. The Patent Office having made out a case of prima facie obviousness commensurate in scope with the claims, it became incumbent upon the appellant to rebut that case, if he could, with evidence of similar scope. In re Tiffin, 448 F.2d 791, 58 CCPA 1420 (1971) (per curiam). This he did not do, by either example or persuasive argument based on known laws of physics and chemistry, with respect to either the range of solvents or the range of weight percentage of the lithium salt recited in the claims.[4] Appellant's recitation of his academic degrees and his experience in the field followed by the bare assertion that he could extrapolate to the ranges recited in his claims "On the basis of * * * [his] experience in this area" is far too little to compensate for the paucity of his data.

Accordingly, the decision of the board is affirmed.

Affirmed.

---

ness of the claimed subject matter in order to rebut the Patent Office's showing of prima facie obviousness. We have decided the case on this assumption.

3. This is broadly true of claims 1–11, which recite a range of 20–50% by weight of the lithium salt; claim 12 recites a range of 25–40% by weight of the lithium salt, but appellant has made nothing of this small difference.

4. Additionally, the solicitor points out that appellant's affidavit evidence concerned only bromacil (the uracil specifically recited in claim 3) of the uracils represented by the structural formula in claim 1 and that the affidavit compares only lithium and sodium salts, of the ten salts listed in Loux. Compare In re Susi, 440 F.2d 442, 445–446, 58 CCPA 1074 (1971). Appellant has protested that these are "new issues" because the board did not make similar objections to the affidavit, and we have not relied on these additional deficiencies in appellant's evidence in sustaining the rejection.