**Application of Stanley A. GREENFIELD and John A. DuPont.**

**Appeal No. 77–632.**

United States Court of Customs and Patent Appeals.

March 16, 1978.

Franklin D. Wolffe, Fidelman, Wolffe & Waldron, Washington, D. C., attorneys of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Henry W. Tarring, II, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the decision of the Patent and Trademark Office ("PTO") Board of Appeals ("board") sustaining the examiner's rejection of claims 6, 7, and 9 of application serial No. 389,745, filed August 20, 1973, for "Formaldehyde Stabilized Coating Compositions." We affirm.

## BACKGROUND

*The Invention*

The claimed subject matter is directed to a paint composition comprising an acrylic polymer in a water carrier containing a 3–isothiazolone as a mildewcide and *formaldehyde as a stabilizer for the 3–isothiazolone,* which composition has been neutralized to a pH of 6.0 to 9.2 with ammonia or an amine. The 3–isothiazolone prevents mildew growth in the dry paint film on the organic binder material of the coating; the formaldehyde stabilizes the 3–isothiazolone against degradation, which occurs under alkaline conditions in the latex form (in the paint can). The claims on appeal are:

6.[1] In a coating composition which comprises a film-forming acrylic emulsion polymer, a water carrier and a 3–isothiazolone having the formula:

wherein Y is a hydrogen atom, a $(C_1–C_{18})$ alkyl group, a $(C_6–C_{10})$ aryl group, or a $(C_7–C_{10})$ aralkyl group;

R is a hydrogen atom, a halogen atom, or a $(C_1–C_4)$ alkyl group, and

R' is a hydrogen atom, a halogen atom, or a $(C_1–C_4)$ alkyl group, and

---

1. For the sake of a clarity, claim 6, which is dependent from a number of nonappealed claims, has been rewritten in complete form.

wherein the composition is neutralized to a pH of about 6.0 to about 9.2 with ammonia or an organic amine;

wherein the composition further comprises a stabilizing amount of formaldehyde present in an amount equivalent to about 0.5 to about 20 pounds of 37% aqueous formaldehyde per 100 gallons of the composition;

the ammonia or amine is present in an amount of about 0.25 to about 10 pounds per 100 gallons of the composition, and the isothiazolone is present in an amount of about 0.1 to about 20 pounds per 100 gallons of the composition.

7. The composition of claim 6 wherein Y is a hydrogen atom or an unsubstituted ($C_1$–$C_{18}$) alkyl group, R is a hydrogen atom, and R' is a hydrogen atom.

9. The composition of claim 6 wherein Y is a hydrogen atom or a ($C_1$–$C_{18}$) alkyl group, R is a hydrogen atom, and R' is a halogen atom.

*Proceedings Below*

The claims[2] were rejected under 35 U.S.C. § 103 over either of two Lewis et al. patents, '121[3] or '488,[4] in combination with Walker.[5] The Lewis patents disclose several 3–isothiazolones, including those of the appealed claims. Lewis '131 discloses the use of 3–isothiazolones in conjunction with other biocides; Lewis '488 discloses their use as mildewcides in acrylic, water-based paints. Walker discloses the use of formaldehyde as a biocide, particularly as a disinfectant which does not harm paint.

The board found that the Lewis patents and Walker show that both 3–isothiazolones and formaldehyde are known to be useful as biocides in coating compositions. It concluded that since the Lewis patents disclose that 3–isothiazolones "may be utilized as the sole biocidal agents or may be used in conjunction with other fungicides, insecti-

cides, miticides and comparable pesticides," it would have been *prima facie* obvious to combine the 3–isothiazolones of the Lewis patents with formaldehyde. Furthermore, according to the board, the mere fact that appellants "observed" that formaldehyde stabilizes the 3–isothiazolones is not sufficient to negate the *prima facie* obviousness of combining two known biocides, since appellants have not established that chemical degradation was even a problem with respect to all 3–isothiazolones under the claimed conditions.

Upon reconsideration, the board reversed the rejection of claim 8, because there was ample evidence that the claimed 3–isothiazolone species (2–*n*–octyl–3–isothiazolone) has a degradation problem, but it adhered to its decision that the *prima facie* case had not been rebutted with respect to the other claims.

OPINION

In this appeal, appellants have acknowledged that the appealed claims would have been *prima facie* obvious over the Lewis patents and Walker. Therefore, the sole issue for resolution is whether appellants have rebutted this *prima facie* case. See *In re Rinehart,* 531 F.2d 1048, 1052, 189 USPQ 143, 147 (Cust. & Pat.App.1976).

Appellants argue that the *prima facie* case is rebutted by a showing that, under the claimed pH conditions, 3–isothiazolones normally decompose, but that they do not do so when formaldehyde is added to the composition; that is, the presence of the formaldehyde in the paint compositions has the unexpected property of stabilizing the 3–isothiazolones. However, the validity of the argument depends on whether it has been demonstrated that the claimed 3–

2. Although the board affirmed the rejection of claims 1–7 and 9–19, an appeal has been taken only with respect to claims 6, 7, and 9. The board reversed the rejection of claim 8.

3. Patent No. 3,523,121, issued August 4, 1970, for "Certain 2–Carbamoyl–3–isothiazolenes."

4. Patent No. 3,761,488, issued September 25, 1973, for "3–Isothiazolones."

5. Walker, "Formaldehyde," *American Chemical Society Monograph Series No. 159* at 569–74 (3d ed. 1964).

isothiazolones normally decompose under the claimed conditions.[6]

Appellants have submitted no objective evidence to demonstrate the existence of a degradation problem of 3–isothiazolones and rely solely on their specification. Six of the seven examples recite the stabilizing effects on 2–*n*–octyl–3–isothiazolone (the compound of allowed claim 8) of formaldehyde in various paint compositions;[7] specific test results demonstrate the stabilizing effects.[8] The only mention in the entire specification of any other 3–isothiazolone is in Example 6, which states that "[f]ormulations are prepared in which the isothiazolone of Formulation I is replaced by:" followed by a recitation of nine 3–isothiazolones. The example continues:

In the above formulations, when formaldehyde or a compound which releases formaldehyde under basic conditions is present in the formulation, the formulation is stabilized against decomposition of the isothiazolone. However, when formaldehyde or formaldehyde-releasing agent is absent, decomposition of the isothiazolone occurs on storage.

As is evident, there is no recitation of ·the conditions[9] under which these "formulations" were tested,[10] and there is no factual support for the general allegation that unexpected results were obtained. No specific test results regarding these "formulations" are disclosed. Accordingly, appellants have not rebutted the PTO's *prima facie* case. *In re Hyson*, 453 F.2d 764, 59 CCPA 782, 172 USPQ 399 (1972). Mere conclusory statements in the specification, unsupported by objective evidence, are entitled to little weight when the PTO questions the efficacy of those statements. *In re Lindner*, 457 F.2d 506, 59 CCPA 920, 173 USPQ 356 (1972),[11] and cases cited therein.

Appellants argue that the burden is upon the PTO to present evidence that the claimed 3–isothiazolones do not decompose, analogizing the rejection to a finding of insufficient disclosure under section 112. If appellants had established that several of the species within claims 7 and 9 were subject to decomposition or if they had provided, *with supporting evidence,* some scientific basis to explain why all 3–isothiazolones would decompose under the claimed conditions, they would have a basis for arguing that the , burden has been shifted back to the PTO. But in this section 103 rejection, the board has not challenged the

6. We are inclined to agree with appellants that, if the record establishes that formaldehyde stabilizes the claimed 3–isothiazolones under the claimed conditions, the *prima facie* case would be rebutted. *In re Nolan*, 553 F.2d 1261, 193 USPQ 641 (Cust. & Pat.App.1977); *In re Albrecht*, 514 F.2d 1385, 185 USPQ 585 (Cust. & Pat.App.1975); *In re Murch*, 464 F.2d 1051, 59 · CCPA 1277, 175 USPQ 89 (1972). The board indicated that this stabilizing property would be sufficient to rebut the *prima facie* case in its reversal of the rejection of claim 8, for which it found sufficient evidence that the claimed 3–isothiazolone normally decomposes under the claimed conditions in the absence of formaldehyde.

7. A footnote to Example 1 suggests that 5–chloro–2–*n*–octyl–3–isothiazolone was also tested; however, no specific test results are disclosed.

8. Sample No. 1 (a relatively impure sample of the 3–isothiazolone) discloses that there was 41% degradation after 90 days, when no formaldehyde was added, but when the formaldehyde level was 20, there was only 12% degradation.

9. Although the disclosure does recite "basic" conditions, this generalized disclosure is insufficient, particularly in light of the specification's statement that degradation occurs under "*highly basic* conditions."

10. Appellants argue that the "normal reading of this Example is that the conditions of Example 1 are repeated, save for the substitution of the specific isothiazolone"; hence, the conditions of Example 1 are incorporated into Example 6. Although the example could have been so worded, it was not. This example refers only to "Formulation I" which was *used* in Example 1, but there is no implication that the conditions of Example 1 are the same in all examples using Formulation I. We note that Example 2 uses Formulation I, but separate testing conditions are recited.

11. This case is strongly reminiscent of *Lindner,* where only one mixture of the ingredients was tested; yet the specification contained broad conclusory statements regarding other mixtures which were also within the scope of the claims.

adequacy of appellants' disclosure—only the adequacy of the proof submitted to rebut the PTO's *prima facie* case.

In summary, the specification discloses test results of the stabilizing effects of only one 3–isothiazolone (and generalized conclusions regarding a few other species) [12] of a claimed subgenus which consists of several hundred compounds.[13] Establishing that one (or a *small* number of) species gives unexpected results is inadequate proof, for "it is the view of this court that objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support." *In re Tiffin,* 448 F.2d 791, 792, 58 CCPA 1420, 1421, 171 USPQ 294 (1971);[14] *In re Lindner, supra.* This court's conclusion in *Lindner, supra,* 457 F.2d at 508, 59 CCPA at 923, 173 USPQ at 358, is equally pertinent here:

> Here only one mixture of ingredients was tested . . . . This particular mixture was found to produce a good dispersion with refractory 7–21–7 fertilizer solutions. As the board noted, the specification also indicates that the same mixture was successfully used with 7–21–7 fertilizer solutions. The claims, however, are much broader in scope, covering mixtures of numerous compounds, and we have to agree with the Patent Office that there is no "adequate basis for reasonably concluding that the great number and variety of compositions included by the claims would behave in the same manner as the [single] test composition." [Citation omitted; emphasis added.]

Regarding appellants' argument that it is "believed obvious" that the substituents linked to the heterocyclic ring would not be *expected* to affect decomposition, but rather the more reactive members of the ring (S, N, and O atoms) would be the location of the decomposition, there simply is no supporting evidence.[15] And arguments of counsel cannot take the place of evidence.[16] *In re Pearson,* 494 F.2d 1399, 181 USPQ 641 (Cust. & Pat.App.1974).

In view of the foregoing, the decision of the board is *affirmed.*

*AFFIRMED.*

---

12. The specification recites a total of five species which are encompassed within claim 7. Only two of the species of claim 9 are recited. All nine of the species of Example 6 are within the scope of claim 6; however, the breadth of claim 6 is such that it encompasses literally thousands of compounds.

13. Contrary to appellants' suggestion, each of the claimed subgenuses encompasses hundreds of compounds, since the $(C_1–C_{18})$ alkyl chains may be branched.

14. In *Tiffin,* the *prima facie* case was rebutted by a showing of commercial success in regard to those claims limited to "cups." But where the claims were broader (to "containers"), the court held that the proof was insufficient to rebut the *prima facie* case.

15. A further argument of appellants is that any compound which stabilizes the species of claim 8 would also stabilize the other claimed 3–isothiazolones. However, their burden of showing *unexpected* results cannot be satisfied by establishing that one species decomposes under the claimed conditions, coupled with a mere *expectation* that all related compounds will also decompose under similar conditions.

16. Nor is this the type of matter which is the proper subject of judicial notice. *In re Barr,* 444 F.2d 588, 591 n. 5, 58 CCPA 1388, 1395 n. 5, 170 USPQ 330, 334 n. 5 (1971).