**1356**

In the Matter of the Application of Herbert C. DILL and Stanley R. Scales.

Appeal No. 79–518.

United States Court of Customs and Patent Appeals.

Aug. 9, 1979.

Robert A. Felsman, Fort Worth, Tex., atty. of record, for appellants; Dennison, Dennison, Mesorole & Pollack, Arlington, Va., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Associate Solicitor, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Judges, and PENN,* Judge.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board), affirming the rejection of claims 1–7 and 9–15 in application serial No. 657,990, filed February 13, 1976, entitled "Earth Boring Tool With Improved Inserts." The board affirmed the examiner's rejections under both 35 U.S.C. § 103 and 35 U.S.C. § 112. Claims 8 and 16 stand allowed. We affirm the rejection on § 103.

*The Invention*

Appellants' invention pertains to earth-boring tools. Particularly, the invention is directed to the hard inserts which serve as the cutting members of such tools, as well as to improved methods for mounting the inserts in the earth-boring drill bit which achieve better retention of the insert and reduce insert fracture during use. In appellants' Figs. 1 and 2, below, a typical earth-boring drill bit 11, and inserts 17 made according to the invention (shown mounted in Fig. 1 and enlarged but unmounted in Fig. 2) are depicted.

* The Honorable John G. Penn, United States District Court for the District of Columbia, sitting by designation.

Fig. 1

Fig. 2

Appellants have discovered that by conditioning the surface of a substantially cylindrical drill bit insert to impart to it a particular degree of surface roughness, the insert, when press-fitted into a receiving hole in the drill bit face, is considerably less susceptible to the problems which have plagued prior art earth-boring tools—the loss of inserts due to imperfect retention, and the fracture of inserts during earth boring operations.

To aid in visualizing the range of surface roughness which appellants have found to be satisfactory, they have provided Figs. 4 and 5, reproduced below, in their specification. These figures are taken from charts produced by moving a diamond-tipped stylus, having a rounded tip with a 0.0005 inch radius, across the surface of an insert to record the surface contours of the inserts over a short distance. Fig. 4 represents the surface of a prior art insert and Fig. 5 represents the surface roughness of an insert made according to the invention.

Fig. 4

**1358**

Fig.5

VERTICAL DEVIATION (ONE SMALL DIVISION = 20 MICRO INCH)

DISTANCE ALONG SURFACE (ONE SMALL DIVISION = .002 INCH)

In the appealed claims, appellants recite the desired surface roughness of the inserts by resort to product-by-process language. Claims of the first group, comprising claims 1–4, drawn to the tool, and claims 9–10, drawn to methods of retaining the insert in the drill bit, define the surface roughness in terms of the means used to impart roughness to the insert, namely, an *abrading* process. Claim 1 is illustrative:

1. An improved earth boring tool of the type having at least one sintered tungsten carbide insert with a wall surface interferringly [*] secured to the wall of a retaining hole, the improvement comprising a substantially cylindrical wall surface roughened to a condition similar to that obtained by abrading the inserts with abrasive particles having hardness greater than 9.0 on Mohs' Scale. [* We have copied appellants' apparently consistent misspelling of this word throughout.]

Claims of the second group, comprising claims 6–7, drawn to the tool, and claims 12–15, drawn to methods of retaining the insert in the drill bit, define the degree of surface roughness by reference to the abrasive *tumbling* process used to produce it. Claim 6 is illustrative:

6. An improved earth penetrating tool of the type having at least one sintered tungsten carbide insert with a wall sur-face interferringly secured to the substantially cylindrical wall of a retaining hole, the improvement comprising a wall surface of the insert conditioned for improved retention in the interferringly mating hole by grinding and then tumbling multiple inserts in a particulate medium having the hardness characteristics of essentially boron carbide.

Claim 5, drawn to the tool, defines a roughness range by establishing upper and lower limits of roughness, determined by comparison to roughness produced by grinding and that which is known as a mat finish. Appellants assert that this range would be recognized by the industry. Claim 5 reads:

5. An improved earth boring tool of the type having at least one sintered tungsten carbide insert with a wall surface interferringly secured to the drilled and reamed wall of a retaining hole, the improvement comprising a substantially cylindrical wall surface randomly roughened to achieve asperities in a range varying from a maximum value, which is essentially smaller than that formed by grinding, to a minimum value, which is essentially larger than the mat finish obtained by abrading with aluminum oxide.

## The Prior Art

The examiner and the board based the rejections under § 103 on two prior patents. Stebley[1] teaches the making of an earth-boring drill bit insert, similar to that involved here, by slurry-tumbling the insert with aluminum oxide particles. While appellants teach the use of a substantially cylindrical insert, Stebley teaches the use of an insert having a polygonal cross-section and tapered towards one end to solve the retention problem.

Smith-Gorman[2] teaches the use of silicon carbide, a relatively hard abrasive particle, in a slurry-tumbling process. The process is disclosed for the purpose of de-burring and polishing metal and plastic articles.

## The Rejections

The examiner and the board concluded that it would have been obvious to one skilled in the art to substitute the abrasive particles of Smith-Gorman in the process of Stebley, and stated that the abrasive particle size recited in the claims was disclosed by Smith-Gorman. Further, the board felt that the claims did not specify any particular degree of surface roughness or specific structure of the wall surface to distinguish over Stebley, who teaches a similar tumbling process to produce the inserts. This analysis was applied to both the apparatus and method claims.

Rejection was made under § 112 because the examiner and the board found that the claims did not distinctly define the invention and that the specification and drawings were not supportive of the claims, or were not enabling with respect to the claims.

The first flaw that the board found in the claims relates to the second paragraph of § 112. The board looked to the specification to find what it felt that appellants regard as their invention. It concluded that appellants regard their invention to be the particular degree of surface roughness of the inserts. The board stated:

As we view appellants' disclosure we believe appellants consider their invention to be identified with the Figure 5 disclosure. There is no other disclosure which identifies a desired degree of roughness which would produce the improved retention of the insert in a boring bit. The rejected claims do not define the insert structurally so that it would fall within the limits of Figure 5 nor do the process claims set forth a procedure whereby an insert with the degree of roughness of Figure 5 would be produced.

In response to the examiner's statement that the "specification and drawings do not support the claims," the board disagreed, stating "that the specification does describe the invention as broadly as it is claimed * * *." The board thought the rejection under the first paragraph of § 112 to be nevertheless sustainable since—

* * * a rejection based on the first paragraph of section 112 might still lie since the specification must also present enough information to enable any person skilled in the art to make and use the invention claimed.

In this regard, the board was of the opinion that the specification does not disclose how the desired surface roughness can be imparted to the inserts by simply using hard abrasive particles.

Specifically, the board questioned the adequacy of the roughness limits as described in the specification. The board noted the affidavit of co-inventor Dill, dated September 6, 1977. Dill states:

Grinding produces a surface that is readily identified by one skilled in the art, particularly with the aid of magnification. Circumferential grooves or striations are worn into the cylindrical surface

1. U.S. Patent No. 3,651,716, issued Mar. 28, 1972.

2. British Patent No. 855,865, published Dec. 7, 1960.

by the wheel, and these are observable. *The depth and number of asperities or striations depend on the grinding wheel and the grinding conditions. * * *.* * * * [Tumbling the inserts in aluminum oxide] diminishes the striations in the ground insert, resulting in a smoother surface. *The number and depth of asperities per lineal increment depend on the duration and conditions of the tumbling.* [Emphasis ours.]

The board considered these statements as an admission that the art, as well as appellants' disclosure, has no specific structural definition of a grinding finish, a mat finish, or a finish produced by tumbling. Yet, these terms are used by appellants to define the degree of surface roughness of their inserts. According to the board, this demonstrates that the disclosure is lacking in sufficient detail to enable one of ordinary skill in the art to make and use the claimed invention.

### Appellants' Arguments

With respect to the § 103 rejections, appellants argue that the references teach away from the invention. They note that Stebley calls for the use of a tapered, polygonal insert which is abraded with a relatively soft abrasive, aluminum oxide. They also state that Smith-Gorman recites a tumbling process for the purpose of de-burring plastic or metal articles and does not suggest the use of their preferred abrasive, boron carbide.

Appellants also argue that, even if the PTO has made out a prima facie case of obviousness, they have presented sufficient evidence of unexpectedly superior results to rebut it. They refer to the affidavit of Dill, dated August 8, 1976, which shows a 50% improvement in retention when inserts tumbled in boron carbide are used.

With respect to the § 112 rejections, appellants assert that the other Dill affidavit, quoted supra, shows that the art recognizes the meanings of the terms used in their specification and claims as descriptive of particular degrees of roughness. They ask that the claims be read in light of the specification to establish the abrading times and abrasive particle sizes.

### OPINION

The PTO has established a prima facie case of the obviousness of the appealed claims. Appellants' specification acknowledges Stebley's teaching that drill bit inserts may be finished by slurry-tumbling in an abrasive particle medium to produce a desired surface finish. Although this reference teaches the use of aluminum oxide as the abrasive medium in the tumbling process rather than the harder particles taught by appellants, Smith-Gorman teaches the use of silicon carbide particles as abrasives in the tumbling process. Silicon carbide has a Mohs' scale hardness greater than 9.0, and thus lies within the range·contemplated by appellants. We agree with the solicitor that a person of ordinary skill in the art would be expected to utilize any of the abrasive particles known in the art in a tumbling process. Furthermore, Smith-Gorman teaches the use of 230 mesh size particles, a size which falls in the center of appellants' recited range of 100 to 325 mesh.

This analysis, in addition to applying to the claims which define the surface of the inserts in terms of the abrading process used to produce it, applies also to claim 5 which defines the surface of the inserts as having asperities in a range lying between those produced by grinding and those existing in a mat finish. The Dill affidavit, dated September 6, 1977, equates a slurry-tumbled finish with that falling within the range recited in claim 5. We take this as an admission that the finish recited in claim 5 is the same as that recited in the other claims calling for a slurry-tumbled finish. Thus, claim 5 is likewise prima facie obvious from the cited references.

The critical question under § 103 is whether appellants have presented sufficient rebuttal evidence. We hold that they have not.

The evidence presented to rebut a prima facie case of obviousness must be commensurate in scope with the claims to which it pertains. *In re Greenfield,* 571 F.2d 1185, 197 USPQ 227 (Cust. & Pat.App.1978); *In re Tiffin,* 448 F.2d 791, 58 CCPA 1420, 171 USPQ 294 (1971). The claimed subject matter here is considerably broader in scope than the evidence offered by way of the Dill affidavit, and, thus, the affidavit is not sufficient to rebut the PTO's prima facie case.

When we examine the Dill affidavit dated August 8, 1976, we find that prior art inserts were compared with inserts which had been "tumbled two hours in a milling jar containing slurry of finely milled boron carbide and water." No other comparisons were made. We agree with appellants that, as far as the affidavit goes, it does demonstrate markedly superior results. However, it does not go far enough because it offers no proof whatsoever pertaining to unexpected results obtained with the invention as set forth in claims 1, 2, 4, 9–10, and 12–13, which do not call for tumbling in a boron carbide medium. Thus, the evidence is not commensurate in scope with the claims and the rejections must stand.

Similarly, the affidavit offers no proof with respect to claims 3, 6, 11, and 14, which do not limit the size of the abrasive particles. The affidavit compared the prior art with inserts which had been tumbled only with "finely milled" boron carbide. These claims call for the use of abrasive particles of any size, for which there is no evidence of superior and unexpected results. Clearly, the surface roughness will be closely related to abrasive particle size. As to claims 7 and 15, which recite an abrasive particle size of from 100 to 325 mesh, we find the affidavit evidence to be indefinite, since the term "finely milled" in reference to the boron carbide abrasive particle size is nowhere defined. We take note of the statement found in the Dill affidavit of September 6, 1977, to the effect that a finish produced by tumbling will "depend on the duration and conditions of the tumbling." The size of the abrasive particles used is one condition of the tumbling and without reference to it the affidavit is incomplete. With similar effect, we note that the tumbling *duration* is nowhere specified in any of the claims, which are thus broader in scope than the proof of unexpected results offered in the affidavit.

All of the above defects in the affidavit apply equally to claim 5. As we have noted from the Dill affidavit of September 6, 1977, appellants equate the surface of the inserts of claim 5 with a surface produced by tumbling with boron carbide slurry. The proof offered in rebuttal is limited to tumbling for a definite period of time using "finely milled" abrasive particles. The claim is not so limited and is therefore broader in scope than the rebuttal evidence. Thus, the claimed subject matter is not directly comparable to the treatments described in the affidavit as productive of the superior and unexpected properties.

Since we affirm all of the rejections under § 103, we find no need to address the § 112 rejections. The decision of the board is *affirmed.*

*AFFIRMED.*