923 F.2d 871
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Michael O. THORNER.
 No. 90-1374.
 United States Court of Appeals, Federal Circuit.
 Dec. 11, 1990.
 
 Before RICH, MAYER and MICHEL, Circuit Judges.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 Thorner appeals from the March 27, 1990 decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), Appeal No. 89-2415, affirming the rejection of claims 35-38 in application Ser. No. 06/775,249, titled "Constant Level Delivery of Growth Hormone Releasing Factor or Analogs Thereof To Increase Growth Hormone Secretion or the Biological Effects of Growth Hormone," as unpatentable under 35 USC 103. We affirm.
 
 OPINION
 
 2
 Thorner challenges the Board's approval of the examiner's determination that the appealed subject matter would have been prima facie obvious. Citing Horton v. Stevens, 7 USPQ2d 1245 (Bd.Pat.App. & Int.1988), Thorner argues that in order for an examiner to reject claims as obvious, each and every limitation of the claims presented must be disclosed in the prior art. Here, Thorner alleges, concentration and dosage level were not disclosed in the prior art,[1] so the claimed subject matter could not have been prima facie obvious.
 
 
 3
 We find Thorner's citation of Horton inapposite. Horton, a decision of the Board which does not bind this court, involved an inter partes interference, not an appeal from a PTO examiner's rejection of claims as prima facie obvious.
 
 
 4
 The law followed by this court is that "[a] prima facie case of obviousness is established when the teachings from the prior art itself would appear to have suggested the claimed subject matter to a person of ordinary skill in the art." In re Rinehart, 531 F.2d 1048, 1051, 189 USPQ 143, 147 (CCPA 1976). See also In re Lalu, 747 F.2d 703, 705, 223 USPQ 1257, 1258 (Fed.Cir.1984) ("In determining whether a case of prima facie obviousness exists, it is necessary to ascertain whether the prior art teachings would appear to be sufficient to one of ordinary skill in the art to suggest making the claimed substitution or other modification.") The Board found that DiMarchi and Churchill described both the biologically active agent of the appealed claims, and the particular vehicle in which the biologically active component is dispensed. We believe those findings were sufficient to support a conclusion of prima facie obviousness under the law of this court.
 
 
 5
 The Board's finding that the cited prior art did not disclose the particular amounts recited for the concentration of the peptide in combination with the matrix, nor the dosage levels recited in claims 36 and 38, does not prevent a conclusion of prima facie obviousness. Thorner's specification does not disclose that the recited dosages or concentration levels are critical. Moreover, the concentration ranges recited in independent claims 35 and 37 are quite broad, and any dosage level would meet the language of these claims.
 
 
 6
 Once a prima facie case of obviousness was established, the burden shifted to Thorner to rebut it. See In re Piasecki, 745 F.2d 1468, 1472, 223 USPQ 785, 788 (Fed.Cir.1984). As rebuttal evidence, Thorner points to (1) the examiner's initial statements regarding "incredible" utility,[2] and (2) the Clark study, which suggests that continuous administration of GHRF is unsuccessful, at least when performed intravenously with rats. Thorner alleges that the Board improperly "disregarded" this apparently negative teaching of Clark.
 
 
 7
 On the record before us, however, it appears that the Board engaged in a review of all evidence before it, and then undertook a weighing of the relative positive and negative aspects of that evidence. Although we independently review the ultimate legal conclusion of obviousness, our review of the factual findings undergirding that conclusion is subject to the "clearly erroneous" standard of review. See In re Woodruff, No. 90-1095, slip op. at 5 (Fed.Cir. Nov. 20, 1990); In re Caveney, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985) ("In appeals from PTO rejections, the Federal Circuit does not find facts de novo, but, instead, reviews PTO findings under the clearly erroneous standard.") We do not find clearly erroneous the Board's conclusion that, on balance, the clear and unequivocal disclosures in Churchill and DiMarchi outweigh the specific, narrow research conducted by Clark.
 
 
 8
 Thorner also argues that in making its obviousness determination, the Board "disregarded" the Rule 132 declaration, submitted in response to the Sec. 101 rejection. However, Thorner's 132 Declaration presented results from tests involving intravenous administration of GHRF, not administration via the claimed delayed release modes (subcutaneous implant and microcapsule). The Board found no evidence in the record that intravenous administration is equivalent to or a predictor of the effectiveness of administration by these delayed release modes, and thus, no evidence of "unexpected" results corresponding in scope to the protection sought. We agree. Evidence presented to rebut a prima facie case of obviousness must be commensurate in scope with the claims to which it pertains, In re Dill, 604 F.2d 1356, 1361, 202 USPQ 805, 808 (CCPA 1979), and here it was not.
 
 
 9
 In sum, we agree with the Board that the prima facie case was not rebutted, and accordingly affirm.
 
 
 
 [1]
 The prior art is not totally silent on this point. Clark (page 281) discloses an 8 microgram/day dosage for continuous intravenous administration to rats, albeit an ineffective dosage. Churchill (Example 3) discloses dosage and concentration values directed to the implantation in rats of polymeric discs containing bovine growth hormone (BGH), not growth hormone releasing factor (GHRF). DiMarchi (Col. 12, lines 63-68) discloses that recipient weight and mode of administration are factors which influence the size of a dose necessary to influence a particular response
 
 
 [2]
 This argument was not raised in Thorner's opening and reply briefs to the Board. Since the record does not reflect that the argument was raised before the Board, we will not address it here. Accordingly, we take no position on the question of whether an examiner's statement regarding "incredible" utility, in the context of a Sec. 101 lack-of-utility rejection which is later withdrawn, may properly be taken into consideration as objective evidence of nonobviousness under Sec. 103. We have no reason to believe that the Board did not take all statements of the examiner into account, however, in light of the Board's statement that it had thoroughly considered the entire record before it