**In the Matter of the APPLICATION OF Patrick R. DRISCOLL.**

**Patent Appeal No. 77–560.**

United States Court of Customs and Patent Appeals.

Oct. 6, 1977.

Michael G. Gilman, New York City, attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection of claim 13 of appellant's application, serial No. 316,794, filed December 20, 1972, for "5–Substituted Thiadiazole Ureas and Their Use as Herbicides."[1] We reverse.

### The Invention

The invention relates to 5–alkylsulfonyl–1, 3, 4–thiadiazole ureas which are useful in controlling undesired plant growth.

The appealed claim (paragraphing supplied) reads:

13. A Compound of the Formula

wherein R is alkylsulfonyl ($C_1$–$C_6$);

$R_1$ is selected from the group consisting of H, alkyl ($C_1$–$C_4$), and cycloalkyl ($C_3$–$C_6$);

$R_2$ is from the group consisting of H, alkyl ($C_1$–$C_4$), haloalkyl ($C_1$–$C_4$), alkoxy ($C_1$–$C_4$), alkenyl ($C_2$–$C_4$), alkynyl ($C_2$–$C_4$), aryl, and haloaryl, and wherein $R_1$ and $R_2$ are alkylene which, together with N, form a ring of at least 3, but not more than 6 members;

$R_3$ is H or alkyl ($C_{1-6}$); and X is selected from the group consisting of oxygen and sulfur.

### Background

Pursuant to 35 U.S.C. § 120,[2] appellant has claimed the benefit of an earlier filing

---

1. Mobil Oil Corp. is the real party in interest.
2. Section 120 provides:
 An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

date based on a series of previously filed applications, the present application being designated a continuation-in-part of application serial No. 113,679, filed February 8, 1971 (S.N. 113,679) which is a continuation-in-part of application serial No. 818,078, filed April 21, 1969, which, in turn, is a continuation-in-part of application serial No. 782,756, filed December 10, 1968 (S.N. 782,756).[3]

S.N. 782,756 contains the following disclosure relied on by appellant to support his claim under § 120:

In accordance with the invention, there is provided a compound of the formula [paragraphing supplied]:

wherein R is selected from the group consisting of H, alkyl $(C_1-C_6)$, haloalkyl $(C_1-C_6)$, cycloalkyl $(C_3-C_6)$, halocycloalkyl $(C_3-C_6)$, alkoxy, alkoxyalkyl, alkoxyalkylthio, aryl, substituted aryl, alkenyl $(C_2-C_6)$, alkylthio $(C_1-C_6)$, alkylsulfoxide $(C_1-C_6)$, and alkylsulfonyl $(C_1-C_6)$;

$R_1$ is selected from the group consisting of H, alkyl $(C_1-C_4)$, and cycloalkyl $(C_3-C_6)$;

$R_2$ is from the group consisting of H, alkyl $(C_1-C_4)$, haloalkyl $(C_1-C_4)$, alkoxy $(C_1-C_4)$, alkenyl $(C_2-C_4)$, alkynyl $(C_2-C_4)$,

The first paragraph of section 112 provides:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

3. The "genealogy" of the present application can be traced through additional earlier filed applications, the disclosures of which are irrelevant to the present controversy.

aryl and haloaryl, and wherein $R_1$ and $R_2$ are alkyl which, together with N, form a ring of at least 3, but not more than 6 members;

$R_3$ is H or alkyl $(C_1-6)$; and X is selected from the group consisting of oxygen and sulfur.

Original claim 1 of S.N. 782,756 is a verbatim recitation of the above structural formula.[4]

*Proceedings in the PTO*

Claim 13 was rejected under 35 U.S.C. § 102 as anticipated by Belgian patent No. 743,615, the effective reference date of which is June 23, 1970. The examiner took the position that appellant was not entitled to the benefit of a filing date prior to the reference date because nowhere in appellant's earlier filed applications was there a written description of the subject matter of claim 13 in "full, clear, and exact terms," as required by 35 U.S.C. § 112. According to the examiner:

One skilled in the art reading [the portion of the disclosure of S.N. 782,756 relied on by appellant] would simply *not* conceive of, without more, the new genus reflected in instant claim 13. [Emphasis in original.]

Accordingly, the examiner concluded that inasmuch as the reference discloses several compounds embraced by the appealed claim and has an effective date more than one year prior to the filing date of the present application, it constitutes a statutory bar under § 102.

4. The basic structure of the compounds here involved may be viewed as a combination of two distinct moieties:

The portion on the left is a thiadiazole moiety which is a five-membered heterocycle, the members of which have been numbered in accordance with convention. When X is oxygen, the portion on the right is a urea moiety, urea having the formula $NH_2-CO-NH_2$. When X is sulfur, the portion on the right is a thiourea moiety.

In sustaining the examiner's rejection, the board stated:

In view of the relatively large number of possible values for R, and in the absence of anything in the disclosure to direct one specifically to the subgenus where R is alkylsulfonyl, we cannot agree with appellant's position. * * * To hold otherwise would be to find within appellant's generic description also a description of each subgenus wherein $R_1$ was selected from a single member of the group disclosed, while retaining the generic description of the remaining variable symbols, and each subgenus obtained by carrying out a similar operation with $R_2$ and $R_3$ and X. We think it clear that the single generic description relied on, in the absence of any additional subgeneric disclosure, is incapable of constituting a written description of so many different genera or subgenera of chemical compounds in the manner required by the statute.

The examiner also rejected claim 13 on the ground of double patenting over the claims of S.N. 113,679. 35 U.S.C. § 101[5] was cited as the statutory basis of rejection.[6] However, the board sustained the rejection on a different basis, stating that:

The examiner has incorrectly cited 35 U.S.C. 101 as the basis of his rejection. Although claims 1, 9, 19 and 20 of the co-pending, earlier filed application read on subject matter comprehended by the claim here on appeal, none of the former claims are equivalent in scope to the latter claim. Thus the claims of the parent application are not drawn to the same

invention as the claim before us, and 35 U.S.C. 101 is not applicable. However, the judicially created doctrine of double patenting of the obviousness type is clearly appropriate in this situation, as appellant is evidently aware since a terminal disclaimer has been filed in this case. [Citations omitted.] Inasmuch as no terminal disclaimer has been filed in the parent application, however, the potential extension of monopoly upon which this rejection is grounded has not been obviated, and the examiner's rejection must be affirmed.

Claim 13 was further rejected "as being unpatentable over a count of Interference No. 98,209,"[7] as well as on the grounds that the present specification provides inadequate enabling support for the full scope of the claim (35 U.S.C. § 112, first paragraph) and that the claim fails "to define the invention clearly" (35 U.S.C. § 112, second paragraph). The board reversed the latter rejections.

## OPINION

### The 35 U.S.C. § 102 rejection.

Appellant does not dispute that the appealed claim is anticipated by the Belgian patent if the present application is not entitled to the earlier filing date of S.N. 782,756. Consequently, the sole issue with respect to this aspect of the appeal is whether the disclosure of S.N. 782,756 describes the subject matter of claim 13.

 In resolving this issue, we must view the disclosure of the earlier filed application as would a person skilled in the art

---

5. Section 101 provides:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

6. In the examiner's Answer, appellant was required for the first time to eliminate the conflicting claims from all but one of the copending applications pursuant to 37 CFR 1.78(b), which provides:

Where two or more applications filed by the same applicant, or owned by the same party, contain conflicting claims, elimination

of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application.

Appellant responded to this requirement in his reply brief by electing to prosecute the claims in the present application and indicating that the conflicting claims in S.N. 113,679 would be canceled "at an appropriate time."

7. S.N. 113,679 was involved in Interference No. 98,209. Prior to the board's decision, but subsequent to the mailing of the examiner's Answer, the interference was terminated in appellant's favor. Accordingly, the board considered the rejection moot.

and determine whether it reasonably conveys the information that as of the filing date thereof appellant had possession of the class of 5–alkylsulfonyl–1, 3, 4–thiadiazole ureas defined in claim 13. We are satisfied that it does.

A comparison of the appealed claim with the class of compounds disclosed in S.N. 782,756 reveals that the only difference therebetween lies in the definition of the substituent designated by R. In the appealed claim, R is simply alkylsulfonyl $(C_1–C_6)$, whereas in the earlier application, R corresponds to a Markush group of fourteen variable substituents (the R group), one of which is alkylsulfonyl $(C_1–C_6)$.

The practice of describing a class of chemical compounds in terms of a structural formula wherein the substituents thereof are defined as "a member selected from the group consisting of A, B, C, D * * *" was sanctioned by implication in *Ex parte Markush,* 1925 C.D. 126, 340 O.G. 839, the first decision to consider the propriety of claims so expressed—hence, the name "Markush group." It is generally understood that in thus describing a class of compounds an applicant is, in effect, asserting that the members of the Markush group do not fall within any recognized generic class, but are alternatively usable for the purposes of the invention, and therefore, regardless of which of the alternatives is substituted on the basic structure, the compound as a whole will exhibit the disclosed utility.

An example will serve to illustrate this point. Assume that instead of the foregoing structural formula, S.N. 782,756 expressly disclosed a class of herbicides represented by the formula

"wherein R is selected from the group consisting of H, alkyl $(C_1–C_6)$, haloalkyl $(C_1–C_6)$, cycloalkyl $(C_3–C_6)$ * * * alkylsulfonyl $(C_1–C_6)$" (i. e., R as defined in S.N. 782,756). Given the rationale underlying the use of Markush groups, one skilled in the art would view the above formula as a description of fourteen distinct classes of 5–substituted thiadiazole ureas, each possessing herbicidal activity, just as if the application had listed a first structural formula wherein R was hydrogen, a second wherein R was alkyl $(C_1–C_6)$, a third wherein R was haloalkyl $(C_1–C_6)$, and so on.

Although the preceding example was adduced for illustrative purposes, we believe that, in reality, the exemplified structural formula constitutes the essence of appellant's invention and that one skilled in the art would recognize it as such from the earlier filed application.

S.N. 782,756 points up appellant's contribution to the art with the statement that:

> Particularly effective [herbicides] are [thiadiazole ureas] which contain an organic substituent in the 5–position of the thiadiazole portion.

Thus, the focus is unquestionably on the substituents at the 5–position of the thiadiazole moiety, and not on the substituents of the urea moiety. Accordingly, one skilled in the art would regard the structural formula of S.N. 782,756 as signifying that no matter which member of the R group is present on the thiadiazole moiety, the urea moiety may be substituted or unsubstituted.

We thus agree with appellant that a skilled artisan would recognize from the disclosure of S.N. 782,756 fourteen distinct classes of compounds, each class having a single member of the R group at the 5–position of the thiadiazole moiety and variable substituent groups on the urea moiety. This being the case, it follows that S.N. 782,756 describes the subject matter of claim 13 inasmuch as one of the fourteen classes of compounds is the 5–alkylsulfonyl–1, 3, 4–thiadiazole ureas defined therein.

This record presents yet another instance of the sort of "hypertechnical application" of the written description requirement of

§ 112 which was recently criticized in *In re Johnson,* 558 F.2d 1008, 194 USPQ 187 (Cust. & Pat.App.1977).[8] Were the board's decision permitted to stand, future applicants, particularly in cases of this nature, would in all likelihood find themselves in the predicament reflected in the following observation by Judge Learned Hand:

> If, when [applicants] yield any part of what they originally believed to be their due, they substitute a new "invention," only two courses will be open to them: they must at the outset either prophetically divine what the art contains, or they must lay down a barrage of claims, starting with the widest and proceeding by the successive incorporation of more and more detail, until all combinations have been exhausted which can by any possibility succeed. The first is an impossible task; the second is a custom already more honored in the breach than in the observance, and its extension would only increase that surfeit of verbiage which has for long been the curse of patent practice, and has done much to discredit it. *It is impossible to imagine any public purpose which it could serve.* [Emphasis added.]

*Engineering Development Laboratories v. Radio Corp. of America,* 153 F.2d 523, 526–27 (CA2 1946).

Aside from reiterating the reasons advanced by the board for affirming the examiner's rejection, the solicitor asserts that *In re Ruschig,* 379 F.2d 990, 54 CCPA 1551, 154 USPQ 118 (1967), "may be considered controlling in the present appeal." We disagree.

*Ruschig* involved a claim drawn to a single compound, N–(p–chlorobenzenesulfo-nyl)–N′–propylurea (the structure of which is reproduced in the opinion). The PTO rejected that claim, which was added by amendment, contending that it was not described in the application as originally filed. As presently pointed out by the solicitor, one of the arguments there advanced to overcome the rejection was that the subject matter of the appealed claim was described in an original claim setting forth the structural formula of a benzenesulfonylurea having two variable substituents defined as Markush groups. Any seeming similarity between *Ruschig* and the present case is illusory, however, because the structural formula there relied on could have described, at best, only a subgenus including the specific compound claimed, and not the compound itself. In this respect, *Ruschig* is readily distinguishable from the present case where the exact subgenus claimed is clearly discernible in the generalized formula of the thiadiazole urea set forth in the earlier filed application.

Moreover, it should be readily apparent from recent decisions of this court involving the question of compliance with the description requirement of § 112 that each case must be decided on its own facts. Thus, the precedential value of cases in this area is extremely limited.

Upon the facts of this case, we conclude that the subject matter of claim 13 is described in S.N. 782,756. The other requirements of 35 U.S.C. § 120 presumably having been met, the present application is entitled to the benefit of a filing date prior to the effective date of the Belgian patent. Accordingly, we reverse the rejection of claim 13 under 35 U.S.C. § 102.

---

**8.** In that case a class of thermoplastic polyarylene polyethers was disclosed and claimed in a 1963 application which became involved in an interference, the award of priority therein being adverse to Johnson and Farnham. The sole interference count recited a single species within the class of polyethers originally claimed. In 1972 a continuation-in-part application was filed containing claims which differed from the broad claims of the earlier application by reciting a proviso that excluded, inter alia, the subject matter of the lost count. Those claims were rejected under 35 U.S.C. § 102 on the basis of a Netherlands patent, which was a counterpart of the 1963 application. There, as here, the benefit of an earlier filing date was denied because the newly claimed subject matter was allegedly not described in the earlier application. In reversing the rejection, the court there observed that the applicants were merely excising the invention of another, to which they were not entitled, rather than creating an artificial subgenus or claiming new matter.

*The double patenting rejection.*

Although appellant questions the propriety of rejecting claims in one application on the grounds of obviousness type double patenting over claims of a copending application of the same inventor, we leave the resolution of this issue for another day. We choose instead to assume, *arguendo,* that claim 13 has been properly rejected and to consider whether appellant's terminal disclaimer under 35 U.S.C. § 253 [9] overcomes the rejection.

■ As was stated in *In re Thorington,* 418 F.2d 528, 534, 57 CCPA 759, 765, 163 USPQ 644, 648 (1969):

> [D]ouble patenting rejections usually take one or both of two forms, namely, the "same invention" type "double patenting" identifiable with the statutory provision 35 U.S.C. § 101, saying that an inventor may obtain a patent, interpreted as meaning only one patent; and the "obviousness" type "double patenting," a judicially-created doctrine grounded in public policy rather than statute and primarily intended to prevent prolongation of monopoly by prohibiting claims in a second patent not patentably distinguishing from claims of a first patent. This court has held that a terminal disclaimer is ineffective where it is attempted to twice claim the same invention; however, an "obviousness" type "double patenting" rejection may be obviated by a terminal disclaimer. [Emphasis in original.]

■ As previously indicated, notwithstanding the examiner's citation of 35 U.S.C. § 101, the board relied on the judi-cially-created doctrine of obviousness type double patenting in upholding the rejection of claim 13 over certain claims of S.N. 113,679.[10] As to the effect of appellant's filing of a terminal disclaimer in the present application, however, the board maintained that since no terminal disclaimer had been filed in S.N. 113,679, "the potential extension of monopoly upon which this rejection is grounded has not been obviated * * *." We consider this line of reasoning unsound, inasmuch as the claim in *this* application, which is all that we are presently concerned with, is subject to the terminal disclaimer. If the present application should go to issue during the pendency of S.N. 113,679, and the latter contains potentially conflicting claims, the proper procedure would be, at that time, to reject those claims for double patenting over the claim of the present application. Appellant's failure to file a terminal disclaimer in S.N. 113,679 at this time cannot justify the denial of the claim here on appeal. Accordingly, we reverse the double patenting rejection.

*REVERSED.*

■

9. Section 253 provides:

> Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid. A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest. possessed by the disclaimant and by those claiming under him.
>
> *In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.* [Emphasis added.]

10. S.N. 113,679, claims 1, 9, 19, and 20 of which were cited by the board in upholding the double patenting rejection, does not appear in the record. However, since appellant has failed to argue otherwise, we assume that the appealed claim is a mere obvious variant of the cited claims.